## WAISNER v. HASBROUCK*

(No. 1214; Dec. 15, 1925; 241 Pac. 703.)

Principal & Agent—Ratification of Agent's Unauthorized Act—
Inference of Ratification From Conduct—Auctions and Auc-
tioneers.

1. Principal may ratify unauthorized act of agent.
2. Whether a principal has ratified an unauthorized act of his
agent may be inferred from conduct, in such cases the
question being whether assent may be fairly and reason-
ably inferred from the circumstances.
3. The mere failure of a principal within a reasonable time
to give the agent notice of dissent to agent's unauthorized
act may, in some circumstances, be sufficient to justify
the inference of ratification.
4. In determining whether the principal has ratified the un-
authorized act of his agent by failure to notify of dissent
within reasonable time, it is proper to consider that the
dissatisfaction of the principal appears to be an after-
thought upon the happening of an unexpected event, such
as insolvency of the debtor.
5. In action by principal against auctioneer, who was his agent
in conducting a sale, for damages caused by auctioneer's
taking an unsecured note contrary to instructions, held, that
evidence justified inferences that plaintiff approved and
ratified transaction, it being shown that he never expressed
any dissatisfaction with defendant's action until debtor
became insolvent 19 months after note was made and nearly
a year after time when it was conceded plaintiff had knowl-
edge of all material facts.

*See Headnotes (1) 2 C. J. p. 470 N. 72 (2) 2 C. J. p. 492n. 44
(3) 2 C. J. p. 509 n. 61 (4) 2 C. J. p. 511 n. 76 (5) 6 C. J. p. 842
n. 19.

Appeal from District Court, Sheridan County; Harry
P. Ilsley, Judge.

*Camplin & Camplin*, and *R. E. McNally* for appellant.

No facts sufficient to bar plaintiff's cause of action were
pleaded by defendant, hence the pleadings do not sustain
the judgment; Kirby vs. Union Pac. Ry. 119 Pac. 1042;
Hallack vs. Bresnahen, 3 Wyo. 81; the burden is upon one

pleading estoppel; 10 R. C. L. 845; defendant violated his instructions as an auctioneer in accepting an unsecured note without knowledge of plaintiff; defendant concealed from plaintiff the fact that he had taken the note in defendant's name; plaintiff repudiated the transaction as soon as he gained knowledge of it. Fraud may consist in the concealment of what is true, as well as the assertion of what is false; Nairn vs. Ewalt, 32 Pac. 1110; evidence of knowledge of facts is essential to ratification; Oxford Lake Line vs. Bank (Fla.) 24 So. 480; Bohanon vs. Boston, 49 Atl. 103; Keefe vs. Sholl, 37 Atl. 116; the burden of proof must be clearly made out; Bank vs. Morley, 19 Wis. 52; every doubt is resolved against an agent who violates his instructions; Adams vs. Robinson, 65 Ala. 586; Harvey vs. Turner 4 Rawle (Pa.) 223; a violation of instructions should be promptly reported to principal; Bray vs. Gunn, 53 Ga. 144.

*H. Glenn Kingsley* for respondent.

Plaintiff's evidence defeated his own cause; defendant reserved the right to approve all security taken at the sale, and with knowledge that no security had been taken, granting an extension of one year to the maker of the note. Plaintiff refused payment from defendant on March 20th, 1920; there was a consideration given for said extension. Plaintiff is bound by his own admissions; Hardin vs. Card 15 Wyo. 217; insolvency cannot be proven by mere opinion evidence; Blyth & Fargo Co. vs. Kastor (Wyo.) 97 Pac. 921; the presumption is that defendant acted in good faith; 12 R. C. L. 424; plaintiff released defendant from responsibility by extending the note; plaintiff is estopped; 21 C. J. 1060.

KIMBALL, Justice.

The defendant was employed by plaintiff to sell at auction personal property belonging to plaintiff who was about to remove to Canada. Plaintiff sued to recover

damages alleged to have been sustained by defendant's failure to take a secured note payable to plaintiff from R. Lee Bullington, a purchaser at the sale. The case was tried without a jury, and the judgment on a general finding was for the defendant. The plaintiff appeals. The assignments of error may all be disposed of on consideration of the contention that the evidence is insufficient to support the judgment.

In advertising the sale, and when the sale began, it was announced that purchasers desiring credit would be required to give notes due in seven months with interest at ten per cent. and with approved security. At the sale, March 12, 1920, Bullington bought some cattle for $2408.00 and gave therefor his unsecured promissory note bearing interest at ten per cent. payable in seven months to the order of the defendant. Several other purchasers gave similar notes. Plaintiff did not in words approve the taking of Bullington's unsecured note, nor did he disapprove. It, and other similar notes, were simply taken without remark of approval or disapproval though plaintiff asserts that it was understood that he should approve the security. Until he was preparing to bring this suit, plaintiff never did or said anything to indicate that he thought the Bullington note was, or should be, secured. The explanation of this is that both plaintiff and defendant then knew that Bullington was a man of much wealth in lands and cattle and of unquestionable financial responsibility. That Bullington, as will later appear, became financially embarrassed within the next two years will not seem strange to those who are familiar with the many unexpected failures in the west resulting from the slump at that time in land and livestock values.

A few days after the sale, the parties met for the purpose of settling their accounts, and defendant then offered to buy the Bullington note and also the other notes, but plaintiff refused to sell, saying he preferred to keep them.

He testifies that he never examined the Bullington note but thought it was good because secured. He seems to claim that he thought the note had ''approved security,'' though he, who was to approve the security, did not know what the security was and made no inquiry about it. The defendant testifies that at this meeting all the notes were before them on the desk and with a written statement listing the notes for plaintiff's information, and that he thinks plaintiff examined the notes and checked them with the list. The trial judge probably was justified in believing that plaintiff then, if not before, knew that the note in question was not secured.

After plaintiff declined defendant's offer to buy the note it was endorsed without recourse to plaintiff who then left it and other notes with defendant for collection. When the Bullington note became due the maker asked that the time of payment be extended, and on December 29, 1920, plaintiff wrote from Canada to defendant this:

''In regard to Lee Bullington's extension for another year, I can accommodate him if he can pay that difference and interest; and I can get Sayers' and Burkhart's notes paid. What have they said about their notes?''

The ''difference'' referred to was an error of $150 in calculating the amount due from Bullington for the cattle. The Sayers and Burkhart notes were two of the other notes taken at the sale, and left with defendant for collection. Bullington paid the difference and interest, Sayers and Burkhart paid their notes, and it was understood that the time of the payment of the Bullington note was extended for one year from its due date, or until October, 1921. The plaintiff admits that when he agreed to this extension he knew there was no security for the note, and still there is no disapproval or repudiation of defendant's act in taking an unsecured note. There is evidence that when this extension was granted, Bullington was still

solvent and the owner of unincumbered property sufficient to pay the note. The plaintiff claims that in October, 1921, when the note became due pursuant to the agreement extending the time of payment, Bullington was insolvent and unable to pay anything on the note. The evidence to prove insolvency was not strong, but we will assume that it was sufficient.

Plaintiff contends that the defendant violated his instructions in two particulars. First, in taking the note payable to himself instead of to the plaintiff, and second, in failing to require security for the note. On the first contention we think the district court might have found that the contract whereby defendant was employed as auctioneer permitted him to take notes payable to himself if he so desired, or the court might have decided that the deviation from instructions in that regard was immaterial. Defendant testified that he took the note to himself because he intended to buy it from the plaintiff, as he had bought notes from other persons with whom he had had similar dealings. This explanation seems perfectly reasonable, if any explanation was required. It is admitted that the defendant did offer to buy the note, and there is no claim that plaintiff's title was not as good by defendant's endorsement as it would have been if plaintiff had been the payee.

The defendant claims, among other things, that he received no instructions requiring him to take security for notes given by purchasers at the sale; that the only instructions in regard to giving credit were as to the time of payment and the interest, and that the announcement to bidders that their notes must have approved security was made by him as auctioneer, without any suggestion from the plaintiff. Whether this would make any difference we need not decide, but shall concede for the purposes of our decision that the facts were otherwise, and that defendant was instructed to take notes with security,

and in failing to do so he violated his instructions. We assume, however, that the trial judge found, as he well might, that defendant's failure to take security from Bullington was not prompted by bad faith, but because he thought the note was good without security.

The evidence warranted, if it did not require, a finding that plaintiff never expressed any dissatisfaction with defendant's action in taking the unsecured note until Bullington had become insolvent some nineteen months after the note was made, and nearly a year after the time when it is conceded plaintiff had knowledge of all the material facts. When an agent disobeys instructions, the principal may ratify the act if he wishes to do so. Ratification may be inferred from conduct. In such cases the question is whether assent may be fairly and reasonably inferred from the circumstances. Mechem, Agency (2nd ed.) Sec. 454. This principle is often applied as between agent and principal, especially in cases where the agent has acted in good faith and when in fairness he ought to be given notice of his principal's dissent within a reasonable time, and thus be afforded an opportunity to protect himself if he can. Mechem, supra, Secs. 459, 498; Lyon v. Tams, 11 Ark. 189; Bredig v. Dubarry, 14 Serg. & R. 27; Thayer v. White, 12 Metc. 343; Cairnes v. Bleecker, 12 Johns. (N. Y.) 300; Towle v. Jackson, 1 Johns. Cas. (N. Y.) 110; Norris v. Cook, 1 Curt. 464. The mere failure within a reasonable time to give the agent notice of dissent may in some circumstances be sufficient to justify the inference of ratification. Prince v. Clark, 1 B. & C. 186; Cairnes v. Bleecker, supra. It is proper to consider that the dissatisfaction of the principal appears to be an afterthought upon the happening of an unexpected event such as the insolvency of the debtor. Bray v. Gunn, 43 Ga. 144.

We think this is a clear case for the application of the above principles. The evidence was ample to warrant the inference that plaintiff approved and ratified the transaction of which he now complains. The judgment, therefore, will be affirmed.

*Affirmed.*

POTTER, Ch. J., and BLUME, J., concur.